The **COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION,** Appellee,

v.

**James D. WENGER, Appellant.**

No. 89–1573.

Supreme Court of Iowa.

April 18, 1990.

Mark W. Bennett of Babich, Bennett, Nickerson & Newlin, Des Moines, for appellant.

James E. Gritzner and Kasey W. Kincaid of Nyemaster, Goode, McLaughlin, Voigts, West, Hansell & O'Brien, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LARSON, CARTER, and NEUMAN, JJ.

NEUMAN, Justice.

This appeal stems from charges brought by the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) against attorney James D. Wenger in connection with his representation of Joyce and Charles Rasnic. The complaint alleged that Wenger failed to diligently pursue Rasnics' breach of contract claim against the Burlington Northern Railroad Company. The committee also accused Wenger of repeated failure to respond to its inquiries concerning the Rasnic complaint.

In a hearing before a division of the Grievance Commission, Wenger conceded that he did little, if anything, to advance the Rasnics' case against the railroad during the five-year course of his representation. (The Rasnics eventually sought other counsel to conclude the litigation.) He also admitted a failure to respond to the committee's first letter concerning the matter. He asserted, however, that after receiving a personal call from committee counsel, Charles Harrington, he followed up with a letter dated August 25, 1988, explaining his conduct. Wenger submitted a copy of this letter along with responses to requests for admissions, belatedly filed at the hearing.

Following Wenger's testimony, the committee offered rebuttal testimony that forms the heart of this appeal. Bar Association counsel Norman Bastemeyer testified that he received no letters from Wenger during the investigation and that attorney Charles Harrington was not assigned to the case until late September 1988. Harrington then made a professional statement that he spoke to Wenger for the first time on October 4, 1988, and that, until the hearing, he had not seen a copy of the letter allegedly authored by Wenger on August 25. Based on what he perceived to be Wenger's falsification of the letter and deliberate misstatement of the facts on the witness stand, Harrington orally moved to amend the committee's complaint to charge Wenger with false testimony in violation of EC 1–5 and DR 1–102(A)(1), (3), (4), and (6) of the Iowa Code of Professional Responsibility for Lawyers.

The Grievance Commission allowed the amendment over Wenger's objection that amending the complaint at the close of the hearing deprived him of a meaningful opportunity to respond and therefore violated his right to due process. In its written ruling, the Grievance Commission found that Wenger's dilatory handling of the Rasnic matter warranted a reprimand and that his willful failure to cooperate with the committee justified a three-month suspension. The commission concluded, however, that Wenger testified falsely at the hearing and submitted false evidence, ethical violations which warranted revocation of his license. It is from this latter finding and recommended sanction of revocation that Wenger appeals. Our review is de novo. Iowa Sup.Ct.R. 118.10.

At the outset we note that Wenger does not dispute the allegation that he neglected legal matters entrusted to him by the Rasnics and that such failure to exercise care in the representation of clients constitutes ethical misconduct. Such conduct violates the following sections of the Code of Professional Responsibility: EC 1–5 (requiring high standards of professional conduct), EC 6–1 (requiring competence and proper care in representing clients), EC 6–4 (requiring adequate preparation and attention to legal work), DR 6–101(A)(3) (lawyer shall not neglect client's legal matters), DR 7–101(A)(1) and (2) (lawyer shall not fail to pursue lawful client objectives or fail to carry out contract of employment for professional services), EC 9–2 (lawyer should promote public confidence in law by informing client of material developments regarding case), and EC 9–6 (requiring lawyers to uphold integrity of the profession).

The record also reveals that the committee proved by a convincing preponderance of the evidence that Wenger failed to respond to correspondence with the committee or timely answer requests for admissions during the investigation of the complaint. These acts violated DR 1–102(A)(1) and (5). Recent decisions of this court have imposed sanctions ranging from reprimand to six-month suspension for such violations of the Code of Professional Responsibility. *See Committee on Professional Ethics & Conduct v. Gardalen,* 414 N.W.2d 124, 129 (Iowa 1987) (six-month suspension for two counts of neglect and failure to respond); *Committee on Professional Ethics & Conduct v. Miller,* 412 N.W.2d 622, 624 (Iowa 1987) (three-month suspension for neglect of two estates and refusal to respond); *Committee on Professional Ethics & Conduct v. Rosene,* 412 N.W.2d 634, 637 (Iowa 1987) (failure to close estates in timely manner and lack of cooperation with committee warrants suspension for three months); *Committee on Professional Ethics & Conduct v. Paulos,*

410 N.W.2d 260, 262 (Iowa 1987) (six-month suspension for attorney's inaction with respect to probate matters and failure to cooperate with committee); *Committee on Professional Ethics & Conduct v. Larsen,* 407 N.W.2d 601, 602 (Iowa 1987) (failure to comply with probate deadlines and failure to respond to clerk and committee warrants reprimand); *Committee on Professional Ethics & Conduct v. Johnson,* 404 N.W.2d 184, 186 (Iowa 1987) (six-month suspension for failure to file estate tax return and failure to respond).

■ The fighting issue is whether the commission properly allowed the committee to amend its complaint at the close of all the evidence to charge Wenger with the independent offense of giving false testimony under oath. Without notice of this additional charge, Wenger argues, he has been deprived of his statutory and constitutional due process protections. In defense of its last minute allegation, the committee contends that the truth or falsity of the August 25 correspondence is inextricably intertwined with the charge that Wenger failed to cooperate with the investigation. Thus, the committee argues, Wenger cannot now claim that he was not on notice that false testimony in this regard would subject him to disciplinary action.

We agree that Wenger's credibility was very much in issue regarding the charge that he failed to cooperate with the committee. We are convinced, however, that the failure to respond charge and the amended charge of false testimony are "two different, distinct, and unrelated incidents of misconduct" of which Wenger had notice of only one. *Phelps v. Kansas Supreme Court,* 662 F.2d 649, 651 (10th Cir.1980). No doubt the disturbing inconsistencies in Wenger's testimony caught counsel for the committee by surprise in what was otherwise a routine case of lawyer neglect. Moreover, even the suggestion of false testimony strikes at the very heart of the adjudicatory process. Neither surprise nor chagrin, however, justifies suspension of the statutory and constitutional rights of due process to which Wenger was entitled.

Iowa Supreme Court Rule 118.6 provides, in pertinent part:

The commission may permit amendments to the complaint to conform to the proof or to raise new matters *as long as the respondent has notice thereof and a reasonable time to prepare his defense thereto prior to the date set for hearing.*

(Emphasis added.) The reason for rule 118.6 is plain: allegations of professional misconduct portend severe penalties and thus carry with them "substantial procedural due process protections." *Committee on Professional Ethics & Conduct v. Behnke,* 276 N.W.2d 838, 842 (1979), *appeal dismissed,* 444 U.S. 805, 100 S.Ct. 27, 62 L.Ed.2d 19 (1979); *accord Committee on Professional Ethics & Conduct v. Michelson,* 345 N.W.2d 112, 115 (Iowa 1984).

The scope of this due process protection was explained by the United States Supreme Court in *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968). In *Ruffalo,* the Court recognized that when charges are not lodged against an attorney until the disciplinary proceedings are underway and the respondent has testified, the process may be transformed from a search for the truth to a trap for the unwary. *Id.* at 551, 88 S.Ct. at 1226, 20 L.Ed.2d at 122 (1968); *see also Zauderer v. Office of Disciplinary Counsel,* 471 U.S. 626, 656 n. 18, 105 S.Ct. 2265, 2284 n. 18, 85 L.Ed.2d 652, 675 n. 18 (1985). In ordinary civil or criminal litigation, such a violation of procedural due process would "never pass muster." *Ruffalo,* 390 U.S. at 551, 88 S.Ct. at 1226, 20 L.Ed.2d at 122. Because lawyer disciplinary actions are quasi-criminal in nature, the Court held, "the charge must be known before the proceedings commence." *Id.* at 551, 88 S.Ct. at 1226, 20 L.Ed.2d at 122.

The principles of procedural due process articulated in *Ruffalo* control the present case and compel us to disregard those findings of the commission that are based on the amended complaint. That is not to say, however, that the charge of false testimony must be dismissed. Wenger concedes as much. Unlike the attorney in *Ruffalo,* who

inculpated himself with regard to conduct that had not previously been adjudged unethical, Wenger faces no "newly declared standards of professional conduct" with which he has been "trapped." *See In re Smith,* 403 A.2d 296, 302 (D.C.App.1979) (allowing reinstatement of disciplinary charges well known to attorney when inculpatory statement made). Wenger's statements and evidence, alleged by the committee to be of recent fabrication, may yet prove to be truthful. Under the present record, Wenger has simply had no opportunity to respond to the committee's charge.

■ Accordingly, we decline to act on that portion of the commission's findings and recommended sanction pertaining to the committee's amended charge of false testimony without prejudice to the right of the committee to pursue such charges in accordance with our rules. In the meantime, because of Wenger's neglect of client matters and unwillingness to cooperate with investigation of the complaint, we order the suspension of his license to practice law indefinitely with no possibility of reinstatement for three months from the date of this opinion. This suspension applies to all facets of the practice of law. *See* Iowa Sup.Ct. Rule 118.12.

It is further ordered that the costs of this action shall be assessed one-half against the respondent and one-half against the complainant.

LICENSE SUSPENDED.