The COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Appellee,

v.

Russell S. WUNSCHEL, Appellant.

No. 90–112.

Supreme Court of Iowa.

Oct. 17, 1990.

Rehearing Denied Nov. 26, 1990.

Mark McCormick and Margaret C. Callahan of Belin, Harris, Helmick, Lamson & McCormick, P.C., Des Moines, for appellant.

Charles L. Harrington, Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, LAVORATO, and NEUMAN, JJ.

NEUMAN, Justice.

This is an appeal by attorney Russell Wunschel, and a cross-appeal by The Committee on Professional Ethics and Conduct of the Iowa State Bar Association (hereinafter "Committee") from findings of fact and a disciplinary sanction recommended by a division of the Grievance Commission. The proceedings arise out of Wunschel's involvement in the lease/sale of a Clinton, Iowa motel owned by his wife, Lois, to tenants/purchasers Ron and Zelda Noyes. In a nutshell, the case presents a lesson in how a prudent lawyer ought not to act when consummating a $2 million real estate transaction with strangers who appear to be unrepresented by counsel. We publicly reprimand Wunschel for his failure to uphold the high standards of the legal profession.

I. *Background facts and proceedings.* The facts giving rise to this controversy are described at length in this court's opinion concerning Wunschel's appeal from civil litigation spawned by the same circumstances, *Cornell v. Wunschel*, 408 N.W.2d 369 (Iowa 1987).[1] We stress at the outset, however, that the record developed in *Cornell* differs significantly from the record made in these disciplinary proceedings. In particular, the evidence of nondisclosure of material financial data which we found sufficient to sustain a claim of fraudulent misrepresentation in *Cornell*, see *id.* at 374, was largely discredited by expert accounting testimony in the present case. Therefore, although the relationship of the parties and Wunschel's corresponding professional duty are still very much at issue, the context in which we consider these competing claims appears far less egregious than one might assume from reading *Cornell*.

The case centers on negotiations leading up to the lease of a 100 unit motel in Clinton, Iowa known as the Clinton House. The motel was owned by a corporation whose sole shareholder was Lois Wunschel, wife of attorney Russell Wunschel. The Wunschels had invested in a number of motels through the years and had purchased the Clinton House in 1978 for $1,350,000. Russell Wunschel, who has practiced law in Carroll, Iowa for over thirty-five years, handled all the legal and financial affairs related to these investments.

In late October 1980, a motel broker named Richard Snyder contacted Wunschel about Ron and Zelda Noyes' interest in the Clinton House. The four of them met at Wunschel's office in Carroll. At the meeting, the Noyes requested information on the income and expenses of the motel since December 1979. The record discloses that Wunschel gave them all the financial information they sought concerning the motel's day-to-day operation. The Noyes did not ask for, and Wunschel did not volunteer, information about his sizable infusion of

personal savings to reduce debt related to capital expenditures at the motel.

Following the meeting, the Noyes and Snyder reportedly pored over the financial statements given them by Wunschel in an effort to determine whether purchasing the motel would be a profitable venture. With Snyder's encouragement, the Noyes made an offer to purchase the motel for $1.8 million. The proposed down payment was Zelda Noyes' vendor's interest in a contract on a smaller motel. Wunschel rejected the offer because it included no cash down payment. Zelda Noyes was apparently annoyed with Snyder over this rejection because she claimed he led her to believe Wunschel was interested in such a deal.

What happened next is hotly contested. Zelda claims that Wunschel called them in Arkansas, urging them to come back up to Iowa and stating that if they really wanted the motel they could work something out. Wunschel steadfastly denies he made such a call; he asserts Ron called him. Ron's testimony on the matter is ambivalent.

In any event, Ron and Zelda drove back to Iowa from Arkansas and met with Wunschel in his law office on November 2, 1980, a Sunday afternoon. Dissatisfied with Snyder, the Noyes had decided to negotiate the deal themselves. As it turned out, Zelda and Ron both had realtor's licenses and considerable experience in operating, buying, and selling motels. Zelda had owned and operated the Cheery Motel in Ottumwa, Iowa for seven years before it was sold on contract in 1979. That same year she and Ron assigned their vendor's interest in the Cheery Motel contract as a down payment to buy the Twin Torches Inn in Waterloo. The Noyes' contract for the Twin Torches Inn was rescinded in June 1980. Ron had also purchased and failed in the operation of the Hub Motel in Bethany, Missouri, early in 1980. In sum, the Noyes portrayed themselves as optimistic and eager buyers with substantial experience in real estate as well as motels, but neither

---

**1.** Through remarriage, Zelda Noyes became Zelda Cornell. At the time of these proceedings she was known as Zelda Fiandaca, but the sur- name "Noyes" will be used throughout this opinion.

revealed to Wunschel their true track record in such financial matters.

At the Sunday meeting the discussion centered on the concept of a lease/purchase rather than outright sale of the motel. This would enable the Noyes to acquire the motel without a cash down payment. It would also save Wunschel a sizable real estate commission, retain a $75,000 per year write-off for depreciation, and postpone capital gains liability. As part of the deal, Wunschel agreed to pay for $80,000 in planned refurbishing of the motel's rooms and lobby.

Wunschel drafted a five-year lease calling for monthly payments of $13,500 plus five percent of gross sales in excess of $480,000. The lease further provided that at its expiration the Noyes were obligated to purchase the motel for a sum equal to the greater of $2 million or four and one-half times the previous two years' annual gross receipts. In a separate document drafted by Wunschel, the Noyes assigned to Lois Wunschel their interest in the Cheery Motel contract to cover the first and last months' lease payments. Wunschel placed a discounted value of $80,000 on this contract which had a remaining principal balance of $165,000.

The documents drafted by Wunschel on Sunday were picked up by the Noyes on Monday morning. They returned to Wunschel's office the following Wednesday to close the transaction. Wunschel did not inquire, and the Noyes did not state, whether they had discussed the transaction with independent counsel in the meantime.

Ron and Zelda took possession of the motel on November 15, 1980. Due to a combination of general mismanagement and marital strife, the operation was in financial straits by April 1981. In an effort to stave off an eviction, Zelda sued Wunschel for breach of contract. Her pleadings made no claim of fraud or misrepresentation. A dispute over venue led to an interlocutory appeal. *See Cornell v. Wunschel*, 329 N.W.2d 651 (Iowa 1983). Following remand, Zelda amended her petition in 1984 to charge Wunschel with fraud for misrepresenting the motel's financial position. In 1986, a jury awarded a substantial verdict in Zelda's favor. We reversed due to error in the damage instructions and remanded for a new trial. *Cornell*, 408 N.W.2d at 382.

With retrial pending, Zelda filed an ethics complaint against Wunschel in August 1987. Wunschel promptly responded and denied all allegations of misconduct. The civil litigation was settled without retrial in March 1988. One year later, in March 1989, the Committee filed its formal complaint against Wunschel. The Committee charged Wunschel with violating EC 1–5 (duty to maintain high standards of professional conduct), DR 1–102(A)(1), (4), and (6) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation or any other conduct adversely reflecting on fitness to practice law), and nearly all of Canon 5 of the Iowa Code of Professional Responsibility for Lawyers (requiring a lawyer's independent professional judgment on behalf of a client).

Based on evidence developed at the hearing in this matter, the Committee was allowed (over Wunschel's objection) to assert additional violations of EC 7–18 and DR 7–104. These provisions require that a lawyer not communicate with a party known to be represented by another lawyer or, when dealing directly with an unrepresented party, require that the lawyer give no advice to the unrepresented party except the advice to obtain a lawyer. The Committee also belatedly charged Wunschel with violating the lawyer's duty under EC 9–6 to maintain the integrity of the profession by avoiding even the appearance of impropriety.

The Grievance Commission concluded that the Committee failed to sustain its burden of proving the existence of an attorney-client relationship between Wunschel and the Noyes, thereby eliminating any violation of the conflict-of-interest provisions of Canon 5. The Commission further found that because the Noyes had no attorney at the time of the transaction, Wunschel could not have violated DR 7–104(A)(1)'s prohibition against communicating directly with a party known to be repre-

sented by counsel. The Commission made no finding about the scope of Wunschel's communication with the Noyes given their unrepresented status.

Notwithstanding the foregoing conclusions, the Commission found that Wunschel "deliberately orchestrated, practiced and tolerated a series of circumstances which misled or could reasonably be expected to mislead the buyers into passive trust in his efforts in order to secure an unfair gain for himself and/or his client" in violation of EC 1–5 and DR 1–102(A)(4). For this misconduct, the Commission recommended we suspend Wunschel's license to practice law for six months. It is from these findings and recommended sanction that Wunschel appeals. The Committee cross-appeals from the finding of no attorney-client relationship. Our review is de novo. Iowa Sup.Ct.R. 118.11.

II. *Issues on appeal.* Wunschel raises four issues on appeal. First, he asserts that he was neither charged nor tried on a claim that he had a duty to advise unrepresented parties to obtain legal advice, and thus his due process rights will be violated if he is disciplined for violating such duty. Next he contends that the facts found by the Commission do not constitute violations of EC 1–5 or DR 1–102(A)(4). Third, Wunschel argues this entire proceeding should be barred under the doctrine of laches. And, finally, he claims the recommended discipline is unduly severe. For its cross-appeal, the Committee challenges the Commission's finding that Wunschel did not act as the Noyes' lawyer. Because the relationship between the parties is at the heart of this controversy, we address the cross-appeal first.

A. *Attorney-client relationship.* The Committee endeavored to show the existence of an attorney-client relationship between Wunschel and the Noyes as a predicate to establishing a violation of a number of the ethical duties under Canon 5 concerning client loyalty and conflicts of interest. *See, e.g.,* DR 5–104(A) (attorney shall not enter into contracts with clients when parties' interests conflict); DR 5–105(B) (attorney shall decline representation when loyalty to client is likely to be compromised); DR 5–105(D) (requiring full disclosure of attorney-client conflicts of interest).

Neither Ron nor Zelda appeared personally before the Commission. Instead, the Committee offered selected portions of their testimony given in *Cornell v. Wunschel* in 1986.

The thrust of Zelda's complaint is that at the Sunday meeting when she and Ron were negotiating with Wunschel about the motel, she became increasingly uncomfortable over the complexity of the deal and wished she had a lawyer present. She claims Wunschel ridiculed her for this concern and suggested it was silly to pay someone else for what he could do for them. Wunschel adamantly refutes Zelda's charge. He states that he never did anything to discourage the Noyes from obtaining legal advice. He also admits, however, that he did nothing to encourage them to obtain representation either.

We think Ron's testimony on this issue is instructive, and tends to corroborate Wunschel's position. As the following colloquy with counsel reveals, Ron did not recall the issue of legal representation ever being raised by either Zelda, Wunschel, or himself:

Q. Did Zelda say anything about wanting to take [the documents] to another attorney? A. Not that I recall.

Q. Did you ever say anything to Mr. Wunschel about wanting to have another attorney look at them? A. No.

At the same time, Ron seemed to assume that Wunschel was representing them:

Q. Did you or Zelda take this lease agreement or any of the other documents that were signed on November 5, to an attorney in Carroll, Iowa, or anywhere to have them looked at? A. No.

Q. Why not? A. We were represented by Mr. Wunschel as far as I was concerned....

Q. What do you mean that you were represented by Mr. Wunschel? A. Well, his wife was the owner, then he would be represented as our attorney, I would assume, right?

Q. Why do you assume that? A. Well, he's the attorney. I'm the buyer. Mrs. Wunschel was the owner.

Q. Are you telling me that Mr. Wunschel as the husband of the seller was also the attorney for the buyers? Is that what you're telling me? A. Well, I am assuming that.

Q. Why are you assuming that? A. That's what happened.

On the other hand, Ron does state that Wunschel did nothing to indicate he was representing him and Zelda, other than draft the documents:

Q. What happened to indicate to you that Mr. Wunschel was going to be your attorney in the purchase? A. Only that he was handling the purchase and the lease and he was stating the facts and he had the lease drawn up.

Q. For whom? A. Evidently for Mrs. Wunschel. I didn't ask for who.

Q. Well, if he was doing it for Mrs. Wunschel, how could he also be doing it for you? A. Well, isn't there times when an attorney handles both parties in a buy and sell?

Q. You tell me, you're the witness. A. Yes.

Q. You don't find that at all unusual? A. I don't find that at all unusual.

■ Against this backdrop we consider the Committee's assertion that an attorney-client relationship was established. The Committee bears the burden of proving its allegations by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Piazza*, 405 N.W.2d 820, 821 (Iowa 1987). Like the Commission, we are persuaded that under this record that standard has not been met.

■ An attorney-client relationship is generally established by contract. The contract may be express, or implied from the conduct of the parties. *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977); *Lawrence v. Tschirgi*, 244 Iowa 386, 390, 57 N.W.2d 46, 48 (1953); *Steinbach v. Meyer*, 412 N.W.2d 917, 918 (Iowa App.1987). The party attempting to establish the relationship must prove the following elements:

(1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance. *Steinbach*, 412 N.W.2d at 918.

■ The point at which the attorney-client relationship begins and ends is further defined by the rule that a lawyer bears responsibility for only those legal matters he or she is engaged to discharge. *See Kurtenbach*, 260 N.W.2d at 57 (attorney engaged to set up corporation not professionally liable for subsequent public stock sale). Likewise, allegations of an attorney-client relationship will not be sustained "where the responsibility of the matter is assumed by the client." *Steinbach*, 412 N.W.2d at 919 (quoting *Hansen v. Wightman*, 14 Wash.App. 78, 86, 538 P.2d 1238, 1245 (1975)).

■ The credible evidence in the record suggests that Wunschel thought that the Noyes were either representing themselves or that they planned to take the drafted documents to one of two attorneys previously engaged by Zelda in connection with other matters. In fact, the record supports Wunschel's hunch. Zelda testified that she reviewed the documents with a realtor who had represented her on the Cheery Motel purchase.

Ron Noyes' apparent confusion over Wunschel's role in this transaction, while raising ethical concerns addressed elsewhere in this opinion, is insufficient proof that Wunschel expressly or impliedly agreed to perform legal services on the Noyes' behalf. While Wunschel may have "assisted" the Noyes in the form of drafting the legal documents, Wunschel's wife was the only intended beneficiary of his assistance. Any benefit flowing to the Noyes was merely a circumstantial by-product of this precarious relationship. The Grievance Commission was correct in finding the Committee failed to meet its burden of proof on this issue.

B. *Laches.* Wunschel contends that these proceedings should be barred by the

doctrine of laches. He points out that the alleged offenses occurred ten years ago. Seven years elapsed between the ill-fated Sunday meeting and Zelda's ethics complaint. Moreover, Zelda filed her complaint while retrial in her civil action was pending, a circumstance arguably tending to cast doubt upon her motives.

Given these facts, Wunschel's complaint bears close scrutiny. Some, but not all, jurisdictions that have considered the question allow a lawyer to assert such a defense in a disciplinary proceeding. *See generally* Annotation, *Attorneys at Law: Delay in Prosecution of Disciplinary Proceedings As Defense or Mitigating Circumstance*, 93 A.L.R.3d 1057 (1979). Applying the rules generally applicable to the laches defense, however, we conclude that Wunschel cannot prevail on the theory in this case.

Laches is an "equitable doctrine premised on unreasonable delay in asserting a right, which causes disadvantage or prejudice to another." *First Fed. Sav. & Loan Ass'n v. Blass*, 316 N.W.2d 411, 414 (Iowa 1982). To establish the affirmative defense of laches, prejudice must be shown. *Anita Valley, Inc. v. Bingley*, 279 N.W.2d 37, 41 (Iowa 1979). Prejudice "cannot be inferred merely from the passage of time." *Cullinan v. Cullinan*, 226 N.W.2d 33, 36 (Iowa 1975). The party asserting the defense carries the burden of establishing the essential elements by clear, convincing, and satisfactory evidence. *Blass*, 316 N.W.2d at 414; *Anita Valley*, 279 N.W.2d at 41.

Wunschel supports his claim of prejudice by citing specific evidence no longer available to him due to the delay: corporate tax returns for the Clinton House, his home telephone bills, and various writings that Zelda claims to have made. Wunschel argues that these documents would have exonerated him. We are persuaded that they would have made no difference to the Commission's findings.

The corporate tax returns would have added nothing, since the Commission did not find any fraud or misrepresentation in connection with the motel's financial posi-

tion. Similarly, because the Commission tended to believe Wunschel's version that he did not initiate contact with the Noyes, his home telephone bills would have added little to his defense. With respect to Zelda's writings, other substantial evidence was available at the hearing to impugn her credibility. Given Wunschel's inability to establish the necessary prejudice, we find his assertion of the defense of laches to be without merit.

*C. Due process.* Wunschel claims he was "blindsided" in this case because the Committee charged him with three acts of misconduct, but the Commission based its findings on a fourth ground that he alleges was neither charged nor tried. Specifically, Wunschel acknowledges that he was charged (either originally or by amendment at trial) with fraud through nondisclosure of material financial data, conflict of interest with a client, and/or negotiating directly with persons known to be represented by counsel. He asserts that he has been sanctioned on a fourth ground: for entering a business transaction with unrepresented persons without advising them to obtain counsel. This failure to adequately notify him of the prescribed conduct, Wunschel contends, violates the due process standards announced in *In re Ruffalo*, 390 U.S. 544, 551, 88 S.Ct. 1222, 1226, 20 L.Ed.2d 117, 122 (1968), and *Committee on Professional Ethics & Conduct v. Wenger*, 454 N.W.2d 367, 369 (Iowa 1990).

Based on our de novo review of the record, we think Wunschel misperceives both the scope of the amendment allowed by the Commission and the basis for its recommended sanction. The record clearly reveals that the Committee moved to amend its petition to assert, in the alternative, that Wunschel negotiated the transaction directly with parties known to be represented by counsel *or* entered a business transaction with unrepresented persons without advising them to obtain counsel. Thus, timeliness issues aside, the record does not bear out Wunschel's claim that he had no notice of the Committee's complaint.

More importantly, we do not think Wunschel has accurately characterized the Commission's findings. In their words, Wunschel "deliberately orchestrated, practiced and tolerated a series of circumstances which misled or could reasonably be expected to mislead the buyers into passive trust in order to secure an unfair gain for himself and/or his client, in this case, his wife." Wunschel argues that throughout these proceedings the Committee's allegations concerned only the profitability of the motel, not this "new theory of deception" advanced by the Commission. The operative word in the Commission's finding, however, is *mislead,* a term that plainly comes within the prohibition against conduct involving "dishonesty, fraud, deceit, or misrepresentation" of which Wunschel clearly had notice. *See* DR 1–102(A)(4).

Unlike the situation in *Wenger,* Wunschel has not been charged with "two different, distinct, and unrelated incidents" of which he had notice of only one. *See Wenger,* 454 N.W.2d at 369 (quoting *Phelps v. Kansas Supreme Court,* 662 F.2d 649, 651 (10th Cir.1980)). Wunschel knew he was on trial for what transpired in his office on Sunday, November 3, 1980. Given the complexity of the facts underlying the Committee's complaint, some leeway must be allowed in the characterization of the misconduct. Wunschel was well aware of the incident leading to this prosecution. His right to due process has not been violated.

D. *Sufficiency of the evidence.* The Grievance Commission cited the following facts to support its conclusion that Wunschel violated EC 1–5 and DR 1–102(A)(4):

A. Respondent allowed the buyers to proceed without their original real estate agent, Mr. Snyder.

B. Respondent met with the buyers in his law office without his client present on a Sunday.

C. Respondent never disclosed to the buyers that his only duty was to his client, his wife.

D. Respondent never disclosed to the buyers his potential financial interest in the transaction as the husband of the seller.

E. Respondent did not make it clear to the buyers that it would be beneficial for them to have their own attorney involved in the transactions.

F. Respondent negotiated a highly complex agreement which gave every benefit to his client when possessed with full knowledge of the five circumstances listed above.

■■■ Wunschel argues that none of these findings support the conclusion drawn by the Commission. The argument is not without merit. The record shows that it was the Noyes' choice to proceed without their real estate broker. Moreover, a Sunday meeting—with or without a client—strikes us as neither unusual nor misleading. Because Ron and Zelda believed Wunschel owned the motel himself, and later learned that the true owner was his wife, they can hardly claim to have been caught unaware by Wunschel's financial interest in the transaction. Wunschel's failure to encourage the Noyes to obtain their own attorney arguably falls outside the proscription against fraud and deceit embraced by EC 1–5 and DR 1–102(A)(4). Likewise, the record does not support the assertion that the transaction gave *every* benefit to Wunschel.

Nevertheless, substantial evidence in the record supports the Commission's conclusion that Wunschel misled the Noyes "into passive trust . . . to secure an unfair gain for himself." Interpreting DR 1–102(A)(4) in its broadest sense, Wunschel effectively misrepresented his role in this transaction. Even absent an intent to deceive, an attorney's failure to recognize and correct potentially misleading situations is unethical. *Committee on Professional Ethics & Conduct v. Zimmerman,* 354 N.W.2d 235, 237 (Iowa 1984). Given the size and complexity of the transaction, and his personal stake in it, Wunschel should have bent over backwards to assure that the Noyes had someone looking out for their interest. He did not do so. Instead, he at best kept silent on the question of whether the Noyes should seek independent counsel. Like the

Commission, we infer from the record that Wunschel perceived a personal advantage in the Noyes' ignorance.

Lest our opinion in this matter be viewed as an obstacle to every lawyer engaging in personal business transactions like buying a home or an automobile, we hasten to add that we think it significant that Wunschel was not acting pro se in this matter. He was an attorney representing the interest of a corporation. The fact that his wife was the sole shareholder of the corporation should have served to heighten, not diminish, the care reasonably taken to avoid even the appearance of impropriety.

In conclusion, we are satisfied by the requisite standard of proof that Wunschel failed to maintain the high standards of the legal profession by engaging in conduct amounting to misrepresentation in violation of EC 1–5 and DR 1–102(A)(4).

E. *Sanction.* Wunschel argues that even if his conduct violated the Code of Professional Responsibility, the six-month suspension suggested by the Commission is too severe. We agree. Although Wunschel has previously been reprimanded for a minor probate delinquency, we are not persuaded that the current case compels a lengthy sanction to either protect the public or deter like conduct by others.

■ It has been argued that Wunschel was as much a victim of the Noyes' deceit and financial irresponsibility as they were of his. The fact remains, however, that this case is not about economics, but ethics. As the preamble to the Iowa Code of Professional Responsibility so aptly states:

Each lawyer must find within his own conscience the touchstone against which to test the extent to which his actions should rise above minimum standards. But in the last analysis it is the desire for the respect and confidence of the members of the profession and of the society which he serves that should provide to a lawyer the incentive for the highest possible degree of ethical conduct. The possible loss of that respect and confidence is the ultimate sanction.

For Russell Wunschel's departure from this high standard, we reprimand him.

ATTORNEY REPRIMANDED.

All justices concur except CARTER, J., who dissents.

CARTER, Justice (dissenting).

I respectfully dissent from the opinion of the court.

The court virtually demolishes the several charges against respondent and yet, for reasons inexplicable to me, orders that he be reprimanded. The opinion justifies the reprimand on the ground that respondent misled the Noyes "into passive trust ... to secure an unfair gain for himself."

I find no act or omission of respondent which served to mislead the Noyes into reasonably believing that he was looking out for their interests. Nor is there anything in this record to establish that respondent wished to or did secure an unfair *legal* advantage for himself or his wife in regard to his handling of the Noyes' transaction. If the terms of the transaction were in any way unfair (and I submit that this has not been established), this involves economic rather than legal considerations.

This was a business transaction in which the consideration was bargained for by willing negotiators. In reviewing the ethical responsibility of a lawyer to clients with whom the lawyer is engaging in a joint business transaction, this court has recognized an affirmative duty to avoid a conflict of interest in purely business dealings. *Committee on Professional Ethics & Conduct v. Postma,* 430 N.W.2d 387, 391–92 (Iowa 1988). But, in the present case, the court has found that no attorney-client relationship existed between respondent and the Noyes. Consequently, I do not believe that his actions violated the Code of Professional Responsibility. I would order dismissal of the complaint in its entirety.