# IN THE SUPREME COURT OF IOWA

No. 12–0627

Filed March 28, 2014

**DIEAN SABIN,**

Appellant,

vs.

**IVAN ACKERMAN,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Bremer County, Rustin Thomas Davenport, Judge.

Plaintiff appeals the district court's decision granting defendant's motion for summary judgment. **DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**

David J. Hanson of Hofmeyer & Hanson, P.C., Fayette, and John W. Hofmeyer III of Hofmeyer & Hanson, P.C., Oelwein, for appellant.

Robert M. Hogg and Patrick M. Roby of Elderkin & Pirnie, P.L.C., Cedar Rapids, for appellee.

**CADY, Chief Justice.**

In this appeal, the claims raised by the parties require us to examine the duty of care owed by an attorney hired by an executor of an estate to render legal services in the administration of the estate. The executor brought a legal malpractice lawsuit against the attorney for failing to adequately protect her personal interests during the administration of the estate and in the distribution of property of the estate. The district court granted summary judgment to the attorney based on its determination that the attorney did not have a duty to protect the personal interests of the executor. We transferred the case to the court of appeals, and it reversed the decision of the district court. On further review, we vacate the decision of the court of appeals and affirm the decision of the district court.

## I. Background Facts and Prior Proceedings.

Elmer and Alberta Gaede owned a 120-acre farm near Tripoli, Iowa, in Bremer County. In early 2001, they entered into a contract to lease the farm to James and Marlys Gaede. James and Marlys were husband and wife, and James was a son of Elmer and Alberta.

The term of the lease was sixteen years, and the annual rent was $12,500. The contract gave James and Marlys the exclusive option to buy the property for $200,000 at any time during the lease. If the option to buy was exercised, the purchase price would be reduced by the total amount of the rent that had been paid. Ivan Ackerman, an attorney in Waverly, Iowa, prepared the lease and notarized the signatures of the parties to the contract.

Elmer died testate on February 27, 2005. He was eighty-six years old. Alberta had predeceased him. Under his will, Elmer left his estate in equal shares to three of his four children. The three children were

James; another son, Steven Gaede; and his daughter, Diean Sabin. Another daughter was not included as a beneficiary under the will. The largest asset of the estate was the farmland, which James was farming pursuant to the lease.

Diean was named executor under the will. She designated Ackerman as the attorney in the probate report filed with the court in the probate proceedings. There was no other written documentation of an attorney–client relationship between Diean and Ackerman. The farm was valued at $200,000 in the probate inventory.

During the pendency of the probate proceedings, James and Marlys exercised the option under the lease agreement to purchase the farm. In response, the three beneficiaries of the will and their spouses conveyed the farm by warranty deed to James and Marlys pursuant to the terms of the option. Ackerman prepared the documents to convey title and notarize the signatures on the documents. The deed was placed in escrow pursuant to a written agreement. Ackerman did not advise Diean that the validity of the option might be subject to a legal challenge and did not advise her to seek independent counsel to obtain legal advice on her personal interests in the transaction. Likewise, Diean never expressed to Ackerman any information to question the legality of the option. The estate was subsequently closed.

Diean and Steven later initiated a lawsuit against James, claiming the option under the lease was invalid. They claimed the market value of the farm was much more than the purchase price. Several specific grounds to invalidate the option were asserted, including unconscionability, unreasonable restraint on alienation, and undue influence. The parties later settled the action for a relatively small sum of money.

A short time later, Diean brought this legal malpractice lawsuit against Ackerman. She alleged Ackerman failed to advise her about the potential legal challenges to the enforcement of the option in the farm lease at the time it was exercised by James and Marlys during the administration of the estate. She also alleged Ackerman failed to advise her to seek independent counsel to protect her personal interests.

Ackerman moved for summary judgment. He claimed he had no duty of care to protect Diean's personal interests relating to the enforceability of the option because he only represented her in her capacity as the executor of the estate.[1] In response, Diean argued an estate attorney represents an executor both in the capacity of an executor and with respect to the personal interests of the executor, unless the representation is specifically limited by the attorney. Consequently, she claimed Ackerman had a duty to examine and explain the validity of the option and advise her of the need for independent counsel. In her affidavit and resistance to the motion for summary judgment, she also claimed she viewed Ackerman as representing her personal interests.

The district court granted summary judgment for Ackerman.[2] It found he did not have a duty of care to Diean as a matter of law to advise her about her potential challenges to invalidate the option. The district court found the duties identified by Diean fell outside the duties of an

---

[1]Ackerman also claimed summary judgment was proper based on the settlement of Diean's lawsuit with James and Marlys. He further claimed the release signed by Diean and James in that lawsuit absolved Ackerman of any malpractice. The district court denied summary judgment on these grounds, and Ackerman did not pursue them on appeal.

[2]Attorney Ivan Ackerman died in 2011 while his motion for summary judgment was pending before the court. The parties agreed to continue the lawsuit in his name and not substitute the executor of his estate. *See* Iowa Code § 633.410(3) (2011).

estate attorney because they did not pertain to matters that would have frustrated the testamentary intent of the testator.

On appeal, Diean makes two core arguments to support her claim that the district court erred in granting summary judgment. First, she argues an estate attorney represents the individual interests of the executor unless the attorney specifically limits the scope of the representation to those duties pertaining to the administration of the estate. Second, she alternatively asserts a factual dispute existed whether Ackerman should have known that she believed he was representing her personal interests. If established, Diean asserts Ackerman had a duty to disclose the scope of his representation to her and advise her to seek independent counsel based on potential challenges to the lease and the conflict of interest presented by her potential challenge.

The case was transferred to the court of appeals. It held a factual dispute existed over the question whether Diean had a reasonable expectation that Ackerman was representing her personal interests. Ackerman sought, and we granted, further review.

## II. Standard of Review.

We review a district court's decision on a motion for summary judgment for correction of legal errors. *Phillips v. Covenant Clinic*, 625 N.W.2d 714, 717 (Iowa 2001); *see also* Iowa R. App. P. 6.907. Summary judgment "is appropriate where the moving party shows no genuine issue of material fact and it is entitled to judgment as a matter of law." *Swartzendruber v. Schimmel*, 613 N.W.2d 646, 649 (Iowa 2000); *accord* Iowa R. Civ. P. 1.981(3). "The burden is on the moving party to demonstrate that it is entitled to judgment as a matter of law." *Sallee v. Stewart*, 827 N.W.2d 128, 133 (Iowa 2013). As we determine whether the

moving party has met this burden, we view the record in the light most favorable to the nonmoving party. *Wright v. Am. Cyanamid Co.*, 599 N.W.2d 668, 670 (Iowa 1999). "Even if facts are undisputed, summary judgment is not proper if reasonable minds could draw from them different inferences and reach different conclusions." *Walker Shoe Store, Inc. v. Howard's Hobby Shop*, 327 N.W.2d 725, 728 (Iowa 1982). However, the existence of a duty is generally a legal question and is thus susceptible to summary judgment. *See Ruden v. Jenk*, 543 N.W.2d 605, 607 (Iowa 1997).

### III. Discussion.

A claim for a legal malpractice normally requires the presence of an attorney–client relationship that gives rise to a duty of care for the attorney to protect the client. *Trobaugh v. Sondag*, 668 N.W.2d 577, 580 n.1 (Iowa 2003); *accord Ruden*, 543 N.W.2d at 610; *Schmitz v. Crotty*, 528 N.W.2d 112, 115 (Iowa 1995). The claim also requires the attorney to breach the duty in the performance of an act or in failing to act. *Trobaugh*, 668 N.W.2d at 580 n.1. It further requires the breach to cause harm to the client. *Id.* In response to the arguments asserted by Diean on appeal, we must primarily examine the element of the duty of care required of estate attorneys.

An attorney hired by an executor or administrator undertakes to perform the fiduciary obligations of the personal representative to properly oversee the administration of the estate. *Ruden*, 543 N.W.2d at 610; *see also* Iowa Code § 633.82 (2011) (recognizing an attorney is designated by fiduciary to assist in the administration of the estate. "The employment of an attorney by the personal representative creates between them the attorney–client relationship." 1 Sheldon F. Kurtz, *Iowa Estates: Intestacy, Wills, and Estate Administration* § 2.6, at 58 (3d ed.

1995) [hereinafter Kurtz]. It means the attorney has a duty to exercise reasonable skill and care in handling the administration of the estate for the executor or administrator. *See Ruden*, 543 N.W.2d at 610. This duty requires the attorney to render all services needed in the administration of the estate. *See id.*; *see also* Iowa Code § 633.82. Many of these tasks are identified in the probate code, but some are not. For example, an estate attorney has a duty to advise executors or administrators of the legal validity of instruments that affect the administration of the estate. *See Ruden*, 543 N.W.2d at 610–11 (recognizing a duty of an estate attorney to advise the executors of the legal validity of a written instrument held by the decedent at the time of death that assigned the decedent's interest in a real estate sales contract to the executors).

Yet, attorneys represent clients only on matters they have been engaged to discharge. *Comm. on Prof'l Ethics & Conduct v. Wunschel*, 461 N.W.2d 840, 845 (Iowa 1990); *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977) (recognizing a legal malpractice action requires not just an attorney–client relationship but requires the existence of such a relationship with respect to the act or omission upon which the malpractice claim is based). Thus, matters outside the administration of the estate would not normally be within the scope of representation between an executor or administrator and the designated attorney.

This background helps to reveal that the duties of an attorney hired by an executor or administrator also extend to the estate and to all other distributees. *Ruden*, 543 N.W.2d at 610. The proper administration of the estate requires that the intent of the testator governing the administration of the estate and the distribution of property not be frustrated by a breach of a duty of the attorney. *St. Malachy Roman Catholic Congregation of Geneseo v. Ingram*, 841

N.W.2d 338, 348 (Iowa 2013) (recognizing a lawyer owes a duty to the direct, intended, and specifically identifiable beneficiaries of the will); *Schreiner v. Scoville*, 410 N.W.2d 679, 682 (Iowa 1987) (indicating liability arises when testator's intent is frustrated and beneficiary's interest is lost, diminished, or unrealized). Thus, we have permitted a beneficiary to maintain a legal malpractice action against the designated attorney of an estate when the attorney breaches a duty owed to the beneficiary in handling the estate and causes harm. *See, e.g.*, *Schmitz*, 528 N.W.2d at 515–17 (involving a breach of a duty to beneficiaries when attorney mishandled a tax return that resulted in higher taxes than should have been paid and improperly reduced the share of the estate to the beneficiaries). This third-party-beneficiary doctrine identifies an exception to the general rule that an attorney–client relationship is required to pursue an attorney malpractice action. *See Brody v. Ruby*, 267 N.W.2d 902, 906 (Iowa 1978); *accord* Restatement (Third) of the Law Governing Lawyers § 51(3), at 357 (2000) [hereinafter Restatement Governing Lawyers]; *see also Estate of Leonard v. Swift*, 656 N.W.2d 132, 145 (Iowa 2003) (indicating a third-party claim exists when "the third party is a direct and intended beneficiary of the lawyer's services" (internal quotation marks omitted)).

In this case, Diean did not pursue her malpractice claim against Ackerman under either of these two theories of liability. Her claim does not rest on Ackerman's duty to her in her capacity as the executor to properly perform all services required to administer the estate or his duty to her as a third-party beneficiary of the estate. As revealed in her answers to interrogatories and resistance to summary judgment, Diean's lawsuit centers on a claim that the attorney–client relationship imposed a duty on Ackerman to inform her of all considerations relevant to her

personal interests in connection with the exercise of the option by James during the administration of the estate and the execution of the documents that transferred the farm to James. She also argues that the presence of her personal interests in the exercise of the option imposed a duty on Ackerman to advise her of the need to consult with independent counsel to protect her personal interests by challenging the option if the services he rendered as the estate attorney did not include such a duty. She claimed this breach of duty reduced her chances of success in her lawsuit against James over the option. Thus, the first issue we face is whether an attorney designated by an executor or administrator to assist in the administration of the estate has an independent duty to represent the personal interests of the executor or administrator. It is the role of the court to decide as a matter of law whether a duty of care arises out of a relationship between two parties.[3] *St. Malachy*, 841 N.W.2d at 346.

Diean argues the law recognizes that the attorney retained to represent the executor represents the personal interests of the executor unless the attorney specifically advises the executor that the representation is limited to the administration of the estate. She claims this law establishes a duty for an estate attorney to protect her personal

---

[3]"Historically, we have considered three factors when determining whether a duty exists: '(1) the relationship between the parties, (2) reasonable foreseeability of harm to the person who is injured, and (3) public policy considerations.' " *St. Malachy*, 841 N.W.2d at 346 (quoting *Thompson v. Kaczinski*, 774 N.W.2d 829, 834 (Iowa 2009)). "In *Thompson*, we . . . rejected the use of foreseeability when determining, as a matter of law, that one party did not owe a duty to another." *Pitts v. Farm Bureau Life Ins. Co.*, 818 N.W.2d 91, 98 (Iowa 2012); *see Thompson*, 774 N.W.2d at 835. Recently, we clarified that *Thompson*'s rule reaches beyond physical harm to include, at least, emotional harm as well. *See Miranda v. Said*, 836 N.W.2d 8, 28 & n.13 (Iowa 2013). However, we have resisted expanding *Thompson*'s rejection of foreseeability to "cases . . . that are 'based on agency principles and involve[] economic loss.' " *St. Malachy*, 841 N.W.2d at 346 (quoting *Langwith v. Am. Nat'l Gen. Ins. Co.*, 793 N.W.2d 215, 221 n.3 (Iowa 2010), *superseded by statute*, 2011 Iowa Acts ch. 70, § 45 (codified at Iowa Code § 522B.11(7) (Supp. 2011))); *accord Pitts*, 818 N.W.2d at 99.

interests during administration of the estate. She primarily supports her claim by relying on the rule of professional conduct that permits a lawyer to "limit the scope of the representation." *See* Iowa R. Prof'l Conduct 32:1.2(c) ("A lawyer may limit the scope of the representation if the limitation is reasonable under the circumstances and the client gives informed consent."). Iowa Rule of Professional Conduct 32:1.2(c) is actually a broader principle of law more fully described in the Restatement Governing Lawyers. The Restatement provides:

> (1) Subject to the requirements stated in this Restatement, a client and lawyer may agree to limit a duty that a lawyer would otherwise owe to a client if:
>
> (a) the client is adequately informed and consents; and
>
> (b) the terms of the limitation are reasonable in the circumstances.

Restatement Governing Lawyers § 19(1), at 162. We have relied on the Restatement Governing Lawyers in prior cases to help resolve issues pertinent to the duty of care of estate attorneys. *See Swift*, 656 N.W.2d at 145–46.

While this rule permits a lawyer to limit the scope of representation by agreement with a client, it only creates a duty for a lawyer to advise a client of the scope of representation when an agreement is reached to limit representation. The rule allows an attorney and client to "agree to limit a duty a lawyer *would otherwise owe* to the client." Restatement Governing Lawyers § 19(1), at 162 (emphasis added). Thus, the rule does not support Diean's claim that estate attorneys represent the personal interests of executors or administrators unless specifically limited.

Additionally, a duty for an estate attorney to protect the personal interest of the executor cannot arise from the duty of the attorney to administer the estate. Our cases reveal that lawyers only represent

clients on matters they have been engaged to discharge. *Wunschel*, 461 N.W.2d at 845 (recognizing a lawyer only bears responsibility for those legal matters he or she is engaged to discharge); *Kurtenbach,* 260 N.W.2d at 56 (recognizing a legal malpractice action requires not just an attorney–client relationship, but requires the existence of such a relationship with respect to the act or omission upon which the malpractice claim is based). An attorney does not have a duty to inquire into matters that do not pertain to the discharge of the duties undertaken by the attorney. *Kurtenbach,* 260 N.W.2d at 57. Just like the duties of the executor, the duties of the designated attorney extend to estate administration. *See Ruden,* 543 N.W.2d at 610. The personal interests of the executor are outside the scope of the services needed to administer the estate. The distinction between services related to the personal interests of the executor and services related to estate administration is borne out by the source of compensation for attorneys designated by personal representatives. *See* Iowa Code § 633.198 (recognizing designated attorney is paid from estate funds). The estate funds can only be used for services related to the administration of the estate. *See In re Estate of Scheeler,* 226 Iowa 650, 659–60, 284 N.W. 799, 803–04 (1939).

Moreover, we observe no compelling reason to create a broader duty for an attorney for the executor, or to create a duty for the attorney to affirmatively advise a personal representative that the representation does not extend to the personal interests of the personal representative. The duty advocated by Diean is sought to protect executors who expect that their personal interests are protected by the designated attorney. Yet, personal representatives are protected by our law when they reasonably expect an attorney is representing their personal interests.

The Restatement Governing Lawyers recognizes an attorney–client relationship is created when "a person manifests to a lawyer" an intent for the lawyer to provide legal services and "the lawyer fails to manifest lack of consent" and "knows or reasonably should know that the person reasonably relies on the lawyer to provide the services." Restatement Governing Lawyers § 14(1)(b), at 125. This principle is consistent with our cases that recognize an attorney can impliedly agree to provide legal assistance. *State v. Parker*, 747 N.W.2d 196, 203–04 (Iowa 2008). In fact, the Restatement Governing Lawyers expressly addresses the situation involving a lawyer who represents a fiduciary. *See* Restatement Governing Lawyers § 14 cmt. *f*, at 130–31. It provides:

> Under subsection (1)(b), a lawyer's failure to clarify whom the lawyer represents in circumstances calling for such a result might lead the lawyer to have entered into client-lawyer representations not intended by the lawyer. Hence, the lawyer must clarify whom the lawyer intends to represent when the lawyer knows or reasonably should know that, contrary to the lawyer's own intention, a person, individually, or agents of an entity, on behalf of the entity, reasonably rely on the lawyer to provide legal services to that person or entity . . . .
>
> In trusts and estates practice a lawyer may have to clarify with those involved whether a trust, a trustee, its beneficiaries or groupings of some or all of them are clients and similarly whether the client is an executor, an estate, or its beneficiaries. In the absence of clarification the inference to be drawn may depend on the circumstances . . . .

*Id.*

The obligation imposed on a lawyer to clarify the scope of representation when demanded by the circumstances adequately protects an executor or administrator and obviates the need for a duty to advise in all cases. We also observe that the rules of professional conduct governing the duties of lawyers when conflicts of interest arise provide additional protection. *See* Iowa R. Prof'l Conduct 32:1.7; *see also*

Kurtz § 2.7, at 59–63. When a conflict arises in estate administration, a lawyer should clarify the situation. *See* Iowa R. Prof'l Conduct 32:1.7 cmt. 27.[4]

Finally, the duty of an estate attorney to protect the interests of an executor or administrator who is also a beneficiary provides additional protection from any potential harm to the executor or administrator. *See Schmitz*, 528 N.W.2d at 116. This duty would protect most instances when the administration of the estate would implicate the personal interests of the executor.

Accordingly, we decline to adopt the position advocated by Diean to impose a duty on an estate attorney by virtue of the attorney–fiduciary relationship to represent the personal interests of the personal representative. We conclude the creation of a relationship between an attorney and an executor or administrator does not impose a duty to protect the personal interests of the executor or administrator.

Thus, we turn to consider the alternative argument raised on appeal by Diean that summary judgment was improper because a genuine issue of material fact existed over the question whether a duty for Ackerman to represent her personal interests was created by her expectation of representation. As outlined, the focus of this inquiry is on whether the estate attorney knew or should have known the executor reasonably relied on the attorney to represent the personal interests of the executor.

---

[4]Comment 27 provides:

[C]onflict questions may arise in estate planning and estate administration. A lawyer may be called upon to prepare wills for several family members, such as husband and wife, and, depending upon the circumstances, a conflict of interest may be present. In order to comply with conflict of interest rules, the lawyer should make clear the lawyer's relationship to the parties involved.

We have previously identified one circumstance in which the expectation of representation can expand the duties of an estate attorney to include the duty to protect a personal interest of an executor. In *Ruden,* an estate attorney discovered a written assignment of a contract in the decedent's safe deposit box. 543 N.W.2d at 608. The document assigned the decedent's interest in a contract to the two executors under his will, upon his death. *Id.* The executors were also two of the six beneficiaries under the will. *Id.* at 607–08. The assignment was drafted by another attorney. *Id.* at 608. The estate attorney informed the executor–beneficiaries that they were entitled to receive the contract payments pursuant to the assignment, and he made arrangement for the payments to be made to them. One of the other beneficiaries subsequently challenged the validity of the assignment, which was ultimately found to be invalid. *Id.* at 608–09. This result meant that all beneficiaries shared in the decedent's interest in the contract, not just the two executors.

In the malpractice action brought by the two executors against the designated estate attorney, we first found the estate attorney had a duty in the course of the administration of the estate to properly advise the executors about the validity of the assignment or the contract. *Id.* at 610–11. This duty arose because it was necessary to properly administer the estate. *See id.* Yet, we also found a factual dispute existed over the additional issue whether a personal attorney–client relationship was created between the executors and the attorney that also imposed a duty for the estate attorney to further advise the executors of their personal considerations in a potential malpractice action against the attorney who had drafted the assignment. *Id.* at 611. In response to the challenge by the beneficiary to the validity of the assignment during the

administration of the estate, the estate attorney had written a letter to the executors and asked if they wanted to retain his services to respond to the challenge. *Id.* at 609. We found the totality of the circumstances, including expert testimony, generated a factual issue whether the attorney undertook to represent the executors in the challenge only in their capacity as executors or also in their personal capacity. *Id.* at 611. This question was important because the executors claimed the estate attorney should have advised them of the potential malpractice lawsuit against the preparer of the assignment prior to the running of the statute of limitations period applicable to the lawsuit. *Id.* at 610–11.

The circumstances identified by Diean in this case to support the imposition of a duty of care for Ackerman to advise her of the potential challenge to the lease option and to advise her to seek independent counsel before executing the documents that transferred the farm to James are found in her affidavit filed in resistance to the motion for summary judgment. In the affidavit, she indicated that she viewed Ackerman as her attorney without any limitation and further asserted that he never informed her otherwise. She subjectively believed Ackerman was representing her personal interests. She argues this subjective expectation should control the outcome.

The circumstances of this case fall far short of the circumstances that generated the factual dispute in *Ruden.* In *Ruden,* a jury question over the reasonable expectation of the executors was generated by circumstances that included a discussion between the executors and the designated attorney about engaging the services of the attorney to protect their interests, as well as expert testimony. Here, insufficient facts exist in the record that would permit a reasonable fact finder to conclude Ackerman was reasonably alerted that Diean was relying on him to

advise her concerning her potential interests in challenging the lease option. Our existing legal standard requires such facts. The subjective expectation of the executor is not enough.

Additionally, the option agreement itself did not raise any red flags to reasonably alert Ackerman that Diean needed individual representation. Diean acknowledged her claim of undue influence was not apparent from the written lease, and she does not claim she discussed any facts with Ackerman during the administration of the estate that supported an inference undue influence was involved in entering into the lease in 2001. Furthermore, the restraint-of-alienation claim, which she acknowledged was the thrust of her objection to the option, is a doctrine that has been applied to a fixed-price preemption to buy, not an option to buy. *See Trecker v. Langel*, 298 N.W.2d 289, 292 (Iowa 1980). Most importantly, Diean alleged no facts that showed she had a reasonable expectation that Ackerman represented her personally, rather than in her capacity as a fiduciary. Thus, Ackerman had no reason to reasonably know she believed he was representing her interests in the lease option. We conclude there are insufficient facts to support her claim that would allow a fact finder to conclude that Ackerman reasonably understood that Diean expected him to protect her personal interests in challenging the option.

The proposition urged by Diean that estate attorneys should have a duty to advise executors and administrators that their services are limited would eliminate any confusion presented when executors who engage the services of an estate attorney believe the attorney represents their personal interests. This proposition may describe a better practice for estate attorneys to follow. A better practice, however, does not necessarily describe a legal responsibility for an attorney. Additionally, a

better practice is not necessarily identified and developed from the circumstances of a single case. Instead, a better practice can often result from changes to our governing rules of practice after study and input from the bench and bar. In this case, however, we decline to impose a new duty on lawyers based on the facts and circumstances presented.

## IV. Conclusion.

The district court properly granted summary judgment. We vacate the decision of the court of appeals and affirm the decision of the district court.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**