OPINION OF THE COURT
Howard A. Zeller, J.
This is an action to recover damages for legal malpractice. Plaintiffs Sammy and Grace A. Katsaris move for an order granting them summary judgment on the issue of liability; defendant Joel A. Scelsi cross-moves for summary judgment dismissing the complaint.
On December 29, 1972 in Binghamton the auto Mr. Katsaris was operating was struck by a motor vehicle owned by a corporation, leased to another corporation and driven by Klaus O. Toepelt, an employee of the lessee corporation. Mr. Katsaris was injured.
Mr. Katsaris and his wife retained Mr. Scelsi, an attorney at law, who instituted a lawsuit against Mr. Toepelt and the two corporations. Issue was joined and in April, 1976 the action was tried before this court (Kuhnen, J.), and a jury. Liability was conceded; damages were contested. The jury returned a verdict in favor of Mr. Katsaris for $10,000 and nothing for Mrs. Katsaris in her derivative cause of action. Upon motion of Mr. Scelsi, the Trial Judge set aside the verdict as inadequate and ordered a new trial unless defendants consented to increase the verdict in favor of Mr. Katsaris to $20,000 and to permit an award in favor of Mrs. Katsaris of $500. A written stipulation was executed and filed by defendants. Judgment was entered *116 accordingly on January 17, 1977 in favor of Mr. Katsaris for $20,000 and for his wife for $500.
On January 25, 1977 Mr. Scelsi filed and served a notice of appeal on behalf of his clients who believed the awards to be “grossly inadequate.” No further activity occurred until May, 1979 when Mr. Scelsi moved the Appellate Division, Third Judicial Department, for leave to file the record on appeal and a brief after the prescribed time to do so had expired.* Mr. Scelsi averred the reasons for the delay in perfecting the appeal were difficulties in obtaining the transcript of the trial testimony, his own extended illness and his attention to other pending lawsuits. Defendant Toepelt and the two defendant corporations opposed the motion and cross-moved for a dismissal of the appeal for lack of prosecution.
On July 3, 1979, in a memorandum decision, the Appellate Division denied the relief requested on behalf of Mr. and Mrs. Katsaris and dismissed the appeal stating: “The judgment sought to be appealed was entered January 17, 1977. The moving papers fail to set forth a reasonable excuse for the substantial delay.” An order of dismissal was entered.
On July 1, 1980 Mr. and Mrs. Katsaris commenced this action against Mr. Scelsi to recover damages for malpractice. An answer has been interposed.
A legal malpractice action may be described as a “lawsuit within a lawsuit.” A plaintiff must prove the attorney failed to exercise reasonable care, and also that the plaintiff would have been successful in the underlying action if the attorney had performed properly (Parksville Mobile Modular v Fabricant, 73 AD2d 595, 599, app dsmd 49 NY2d 801). It is only when a default is granted that a *117 plaintiff need not establish the validity of the underlying action (Mendoza v Schlossman, 87 AD2d 606). Here Mr. and Mrs. Katsaris must show that Mr. Scelsi was negligent, and that if the appeal had been perfected, the Appellate Division would have found the award of $20,000 to Mr. Katsaris or the award of $500 to his wife inadequate, or both awards inadequate, and would have reversed the judgment. Also, they must show that ultimately one of them or both of them would have been awarded larger amounts.
Was Mr. Scelsi negligent? Ordinarily the issue of negligence is a question of fact for the jury. However, if the facts are so compelling that no conflicting inferences can be drawn and rational men cannot differ, then the question of negligence may be decided as a matter of law by the court (Nallan v Helmsley-Spear, Inc., 50 NY2d 507, 517).
The facts in the case at bar support a finding of negligence as a matter of law. Mr. Scelsi filed the notice of appeal and did not file the record and appellants’ brief within the time allotted. Two years later he sought leave to file after the prescribed time to do so had expired. The Appellate Division found no valid excuse for the delay in prosecuting the appeal. Mr. Scelsi now does not dispute his responsibility for the appeal or claim the delay was excusable. There is no question of fact as to what happened and reasonable minds could not differ in describing Mr. Scelsi’s conduct as negligent (cf. Andre v Pomeroy, 35 NY2d 361; Di Sabato v Soffes, 9 AD2d 297, app dsmd 11 AD2d 660).
The second issue is how the Appellate Division would have ruled had the appeal been heard.
In 1961 a United States District Court Judge sitting in West Virginia noted his surprise at the paucity of authoritative cases in which a losing party charges negligence against his lawyer for failure to prosecute an appeal. (Better Homes v Rodgers, 195 F Supp 93, 96.) In that case a judgment was entered against a defendant in a negligence action; the defendant’s lawyers agreed to appeal the verdict but failed to file all papers necessary for an appeal; a malpractice action followed. The Judge deferred ruling on a summary judgment motion until the case had been *118 submitted by stipulation as upon trial, and the original record and transcript had been filed. The court then reviewed the record and concluded that judgment non obstante veredicto was not required, and found in favor of the former attorneys.
The Judge ruling on such a case must determine what the appellate court would have done “as an issue of law, based upon review of the transcript and record of the underlying action, the argument of counsel, and subject to the same rules of review as should have been applied by the appellate courts” (Mallen and Levit, Legal Malpractice [2d ed], § 583, p 738). Some Judges have made reviews after a full trial (see, e.g., Pete v Henderson, 124 Cal App 2d 487; Croce v Sanchez, 256 Cal App 2d 680, cert den 391 US 927; Cornelissen v Ort, 132 Mich 294), but as in Better Homes the review also may be made on the transcript of the trial.
Two courts have expressed concern over the idea of a Judge attempting to predict the outcome of an appellate case and of reviewing the decision of a Judge of co-ordinate jurisdiction (Better Homes v Rodgers, supra, p 95; Pete v Henderson, supra, p 490). However, practical considerations must outweigh judicial comity. The Trial Term Judge has already passed upon the adequacy of the awards and it would be inappropriate to refer this motion to him and there is no procedure for transferring it to the appellate court. Thus, this court should determine the issues presented from the affidavits and the transcript of the trial of the motor vehicle action.
This court will attempt to exercise the same scope of review as the Appellate Division which can review questions of law and fact (CPLR 5501, subd [c]). Like a Trial Judge, the Appellate Division can set aside a verdict and grant judgment notwithstanding it, or order a new trial because the verdict is inadequate, or excessive or contrary to the weight of the evidence. “In matters like that, however, which depend on a judicial reaction to what amounts to the whole record, the appellate court is not quick to substitute itself for the trial judge, recognizing the latter’s advantage in having observed the demeanor of the witnesses and otherwise having enjoyed the vivid perceptions *119 offered at the scene itself” (Siegel, New York Practice, § 529, p 731). The Appellate Division, Third Department, in Hogeboom v Protts (30 AD2d 618, 620) reviewed a Trial Judge’s decision to set aside a verdict and wrote: “The duty of the [trial] judge to supervise the reasonableness of the verdicts returned to him ought to be viewed liberally on appeal because the independence of mind with which that duty is exercised is ingredient to the sound health of the judicial process * * * Even if the judges who look at the case on appeal would not themselves have set the verdict aside had they acted in the first instance, they should not find in this alone a ground for reversal. If the case comes within the area within which judicial interference would not be regarded by the profession as unreasonable, the exercise of the power thus to deal with the verdict ought to be upheld.’ ”
Mr. Katsaris and several physicians testified at the trial of the motor vehicle accident regarding the nature of his injuries and treatment. Mr. Katsaris testified that in the accident he hit his forehead on the steering wheel and was knocked unconscious; he experienced pain in the head, neck, and back and was taken to the hospital by ambulance; his treatment included X rays, traction, physiotherapy, and medication. Dr. George Sandiford, a physician specializing in physicial rehabilitation, testified he examined Mr. Katsaris and observed muscle spasms in the neck, limited movement in the trunk and concluded Mr. Katsaris had a “severe cervical and lumbosacral strain,” and profuse tenderness along the muscles of the spine. Dr. Irwin Rosenberg, an orthopedic surgeon, testified he treated Mr. Katsaris on numerous occasions for neck and low back pain, and that the 1972 car accident was the cause of these injuries; Mr. Katsaris cannot hold a job requiring long standing or walking, has sustained a permanent injury, and cannot lift more than 15 to 20 pounds. Mr. Katsaris testified that before the accident he had worked for General Electric as a production expediter, which required much walking around the plant but now is employed by General Electric as an inventory controller, a desk job with little walking but no chance for advancement.
*120 Other evidence was less favorable to plaintiffs. Mr. Katsaris testified that he had sustained injuries and experienced problems on prior occasions with his neck, lower back, and pelvic area. In 1966 he had a urethra operation which caused him to lose time at work; in 1967 he was involved in a car accident which injured his left elbow, caused neck aches, and a headache; in September, 1971 he consulted Dr. Fotouhi regarding lower back pain. In November, 1971 Mr. Katsaris complained about a hernia; Mr. Katsaris was involved in another car accident on December 31, 1975. Dr. Rosenberg testified he treated Mr. Katsaris shortly after that accident for abrasions of the hand and left knee, and a flexion injury of the neck.
Mrs. Katsaris testified that before the 1972 auto accident she and Mr. Katsaris shared housekeeping chores, he helped with snow shoveling and drove them to several vacation places; since the accident they have not gone out as much and it bothers Mr. Katsaris to drive long distances; her husband’s disposition is not as good as before and he has trouble sleeping.
Defendants in the original motor vehicle action retained an orthopedic surgeon, Dr. Farouq Al-Khalidi, who examined Mr. Katsaris on January 23, 1974 and June 30, 1975. Dr. Al-Khalidi testified he “had reason to believe that the patient was exaggerating his symptoms,” which were probably related to tenseness; Dr. Al-Khalidi found no objective signs on January 23,1974 of any injury stemming from the 1972 car accident, and concluded “the patient had probably sustained a soft tissue injury as the result of the accident, such as stretched the muscle or ligament on his back, and this caused him pain. That the injury was a mild one. That it was considerably magnified, overshadowed by his considerable anxieties and his tense personality.” On June 30, 1975 Dr. Al-Khalidi found no evidence of muscle spasm or tenderness in the back and observed that when Mr. Katsaris got dressed he was able to put on his shoes and socks without any sign of the discomfort he showed during the examination; “(t)his should be in some way interpreted that the patient was not sincere in performing the tests.”
The record shows there was sufficient evidence for the jury and the Trial Judge to conclude that Mr. Katsaris’ *121 injuries were not as serious as he claimed. The decision of the Trial Judge to set aside the jury’s verdict unless the defendants in the motor vehicle accident action stipulated to increase the award to Mr. Katsaris to $20,000 and to provide for an award to Mrs. Katsaris of $500 was well within a reasonable range of discretion. My job is not to decide whether I would have ruled the same as the Trial Judge, only whether his decision is supportable. The Trial Judge’s decision is supportable and, in my opinion, the Appellate Division would have affirmed the judgment.
Thus, it is not necessary to approach the issue of whether, had the judgment been reversed, either plaintiff ultimately would have received a higher award.
The motion of plaintiffs Sammy and Grace A. Katsaris for summary judgment is denied.
The cross motion of defendant Joel A. Scelsi for summary judgment dismissing plaintiffs’ complaint is granted.

 The Appellate Division, Third Judicial Department, requires an appellant generally to perfect his appeal within 60 days after service of the notice of appeal (22 NYCRR 800.9 [a]). A respondent may move to dismiss the appeal for lack of prosecution if this deadline is not met, or for any other unreasonable delay in prosecuting the appeal (22 NYCRR 800.9 [d]). The record and brief in a civil appeal must be filed within nine months after entry of the judgment or order; otherwise, the appeal is deemed abandoned and the clerk cannot accept the record for filing unless ordered by the court upon a motion supported by an affidavit showing a “reasonable excuse for the delay and facts showing merit to the appeal” (22 NYCRR 800.12).