Clyde SCHMITZ and Connie
Karhoff, Appellants,

v.

J. Desmond CROTTY, Appellee.

No. 93–1650.

Supreme Court of Iowa.

Feb. 22, 1995.

As Amended Feb. 28, 1995.

James R. Van Dyke of Van Dyke & Werden, P.C., Carroll, for appellants.

Donald A. Beneke, Pocahontas, for appellee.

Considered by McGIVERIN, C.J., and NEUMAN, SNELL, ANDREASEN and TERNUS, JJ.

McGIVERIN, Chief Justice.

This case raises the issue of whether the defendant attorney breached the duty of care he owed to the plaintiff beneficiaries in his handling of their mother's estate as a matter of law. Because the defendant accepted responsibility for the death tax returns he filed on behalf of the plaintiffs' mother's estate and the plaintiffs showed defendant's undisputed mishandling of those returns, we conclude that this is a rare case which requires us to hold in this bench-tried law action that defendant breached his duty to exercise reasonable care as a matter of law. We reverse the judgment of the district court which found no breach of duty and remand for consideration and award of damages to the plaintiffs.

I. *Background facts and proceedings.* Julia Schmitz, the mother of plaintiffs Clyde Schmitz and Connie Karhoff, died on February 10, 1985. In her last will and testament, Julia named her two children, Clyde and Connie, as her sole beneficiaries and co-executors. Julia's will was admitted to probate in the Iowa district court for Pocahontas County, and Clyde and Connie were appointed co-executors. They designated Rodney Hudson, an attorney practicing in Pocahontas, Iowa, as attorney for Julia's estate.

At the time of his designation, Hudson was ninety years old. He was a locally respected lawyer, particularly in probate and property law, having practiced law in Pocahontas since 1916. Hudson prepared and filed with the court the probate report and inventory for Julia's estate. The estate was substantial, including tracts of farmland in Pocahontas and Carroll Counties in Iowa and some farmland in Canada.

Later in 1985, Hudson's physical health deteriorated to the point where it prevented him from completing his work. Recognizing this, he asked the defendant, attorney J. Desmond Crotty, to take over the handling of some of his business affairs, including Julia's estate. Like Hudson, Crotty had practiced law in Pocahontas for several years, beginning in 1965. Over the years the two attorneys had collaborated on a variety of matters and had thereby developed a professional relationship, so Crotty accepted Hudson's invitation and took over the handling of Julia's estate in the summer of 1985.

In taking over and finalizing the probate proceedings for Julia's estate, Crotty did not discuss with either Hudson or the plaintiffs the descriptions of the land listed in the probate inventory which Hudson had filed with the court.

Similarly, when Crotty completed, signed, and filed the federal estate tax return and the state inheritance tax return for Julia's estate in November 1985, he relied on and used the descriptions of the real estate as Hudson had set them forth in the probate inventory. Unknown to Crotty at that time, however, the probate inventory descriptions were incorrect, describing more Carroll County land than Julia had actually owned at her death.

The three relevant legal descriptions of the Carroll County property which Hudson had listed in the probate inventory were as follows:

[Parcel 2] An undivided half interest in the West Half (W 1/2) of the Southeast Quarter (SE 1/4) of Section 36, Township 83, North Range 36, West of the Fifth Principal Meridian, Carroll County, Iowa, subject to a life estate re the whole of said tract of real estate (an undivided 40 acres with no income).

[Parcel 3] The North one-third of the South Half (S 1/2) of the Southeast Quarter (SE 1/4) of the Southeast Quarter (SE 1/4) of Section 36, Township 83, North Range 36, West of the Fifth Principal Meridian, Carroll County, Iowa (13 1/3 acres).

[Parcel 6] An undivided one-half interest in the Southeast Quarter (SE 1/4) of Section Thirty-six (36), Township Eighty-three (83), North Range Thirty-six (36), West of the Fifth Principal Meridian in Carroll County, Iowa, subject to a life estate re the whole of said tract of real estate (an undivided 80 acres with no income).

All of these parcels describe land in section 36 of Carroll County, but parcels 2 and 3 are duplicative of parcel 6 in that parcels 2 and 3 are contained within parcel 6. Also, parcel 3 consists of only six and two-thirds acres rath-

er than thirteen and one-third acres as stated in the description.

As a result of the inclusion of these three descriptions on the federal estate tax return and the Iowa inheritance tax return, the returns included erroneous property descriptions and higher tax computations for the Carroll County land in section 36 than Julia's estate should have paid. In short, Crotty based the federal estate tax and the Iowa inheritance tax upon the value of 133⅓ acres of Carroll County land in section 36 as supposedly owned by Julia at the time of her death rather than on the value of 46⅔ acres which she actually owned.

Moreover, in computing the death taxes for Julia's estate, Crotty used a full per acre value for all of the Carroll County land in section 36 included in Julia's estate as though she had owned all of the land in fee simple. Yet Julia had only owned six and two-thirds acres in fee simple; her ownership in the other forty acres had been subject to a life estate, making her ownership in those forty acres consist of only a remainder interest. Accordingly, the death tax calculations for those acres should have contained a life estate reduction factor to reflect the actual value of Julia's remainder interest and thereby to appropriately reduce the death taxes on her estate.

After Hudson died in 1986, Crotty became the sole attorney for Julia's estate. Acting as such, on May 7, 1987 he filed the final report for Julia's estate with the court. The final report, like the probate inventory filed by Hudson and the death tax returns filed by Crotty, contained incorrect legal descriptions of the Carroll County property in section 36.

The court order approving the final report, discharging the co-executors, and closing the estate was entered on May 11, 1987. Crotty's fees were fixed according to the value of the estate assets, including the erroneously described Carroll County real estate.

Pursuant to the order closing the estate, the Pocahontas County district court clerk certified to the Carroll County auditor a change in title of the Carroll County land to Clyde Schmitz and Connie Karhoff.

A few months later, in September 1987, the Carroll County district court clerk informed Crotty that the legal descriptions of the Carroll County land recently titled to the plaintiffs were incorrect. Thereafter, Crotty prepared and caused the Pocahontas County district court to enter a nunc pro tunc order setting forth different legal descriptions of the Carroll County property in section 36 and in two other sections. Regarding the property in section 36, Crotty deleted the descriptions entitled parcels 2 and 3, and retained the description entitled parcel 6 as the official description of that portion of the Carroll County real estate.

This attempted correction did not rectify but furthered the inaccuracy of the legal descriptions of the Carroll County property in section 36. The evidence showed that the reverse of Crotty's action would have resulted in the correct legal descriptions; Crotty should have deleted the description of parcel 6 and retained the descriptions of parcels 2 and 3. Furthermore, parcel 3 should have been described as consisting of six and two-thirds acres rather than thirteen and one-third acres.

After making the "corrections" through the nunc pro tunc order, Crotty did not recognize or attempt to correct the erroneous descriptions of the same Carroll County property in section 36 on the death tax returns he had previously filed with the tax authorities. Crotty admitted his responsibility for these returns, but he failed to realize the reduction of the acreage would lessen the death taxes on Julia's estate.

Subsequently, in 1991, plaintiffs, while doing some income tax calculations concerning the tax bases for their farms, discovered that the descriptions of the Carroll County property contained in the probate inventory and death tax filings for their mother's estate had been incorrect. They discovered that the Carroll County property descriptions for section 36 were duplicative, resulting in the probate inventory and death tax returns showing 86⅔ more acres of land than their mother had owned in section 36 at the time of her death and, therefore, more estate and inheritance taxes paid than had been required.

Connie contacted Crotty and asked him about filing for tax refunds, but Crotty informed her that the deadline for filing amended tax returns and obtaining refunds had already passed. Crotty also failed to return any of the excess attorney fees that had been based on the higher values and paid to him by Julia's estate.

Thereafter, on August 25, 1992, plaintiffs Connie and Clyde filed a petition against defendant Crotty for legal malpractice, alleging that Crotty breached his duties as their attorney or, in the alternative, that he was negligent while acting as their attorney. Plaintiffs sought damages for overpaid death taxes, inflated attorney fees, and interest.

Following a trial of this law action to the court, the district court dismissed Clyde and Connie's malpractice petition. The court concluded that the plaintiffs failed to prove by a preponderance of the evidence that defendant Crotty had breached his duty of care. The court determined Crotty did not deviate from the ordinary skill and care required of a probate attorney in completing the estate work because he had reasonably relied upon the property descriptions as they had been set forth in the probate inventory by Hudson, an experienced and respected attorney.

Plaintiffs appealed.

II. *Scope of review.* We review a case tried at law in the district court on errors assigned. Iowa R.App.P. 4; *Atwood v. City of Des Moines,* 485 N.W.2d 657, 659 (Iowa 1992). The trial court's findings of fact have the effect of a special verdict, Iowa R.App.P. 4, and are binding on us if supported by substantial evidence, Iowa R.App.P. 14(f)(1); *Claus v. Whyle,* 526 N.W.2d 519, 523 (Iowa 1994) (citation omitted).

■ Moreover, when the trial court following a bench trial denies recovery because a party has failed to sustain its burden of proof on an issue, we will not interfere unless we find the party carried its burden as a matter of law. *Whiteaker v. State,* 382 N.W.2d 112, 114 (Iowa 1986) (citations omitted). We will conclude a party has carried such a burden only when the evidence is so overwhelming that only one reasonable inference on each

critical fact issue can be drawn. *Id.; cf.* Iowa R.App.P. 14(f)(10).

■ III. *Burden of proof and standard of care.* In order to establish a prima facie claim of legal malpractice, plaintiffs must have introduced substantial evidence that shows: (1) the existence of an attorney-client relationship giving rise to a duty; (2) the attorney, either by an act or failure to act, violated or breached that duty; (3) the attorney's breach of duty proximately caused injury to the client; and (4) the client sustained actual injury, loss, or damage. *Dessel v. Dessel,* 431 N.W.2d 359, 361 (Iowa 1988).

Defendant does not really contest elements one, three and four, and we conclude plaintiffs have proved them.

Therefore, the focus of this case is on the second element: breach of duty. An attorney breaches the duty of care owed to the client when the attorney fails to use "such skill, prudence and diligence as lawyers of ordinary skill and capacity commonly possess and exercise in the performance of the task which [is undertaken]." *Martinson Mfg. Co. v. Seery,* 351 N.W.2d 772, 775 (Iowa 1984) (citations omitted).

■ Ordinarily the issue of whether an attorney has exercised reasonable care is a question of fact. *See Dessel,* 431 N.W.2d at 361; 7 Am.Jur.2d *Attorneys at Law* § 224, at 267–68 (1980). However, if the facts are so compelling that no conflicting inferences can be drawn from them and rational people cannot differ in response, then whether an attorney has performed the duty owed may be decided as a matter of law by the court. *Baker v. Beal,* 225 N.W.2d 106, 112 (Iowa 1975); *accord Lysick v. Walcom,* 258 Cal. App.2d 136, 65 Cal.Rptr. 406, 416 (1968); *Katsaris v. Scelsi,* 115 Misc.2d 115, 453 N.Y.S.2d 994, 996 (Sup.Ct. Broome County 1982); 7 Am.Jur.2d *Attorneys at Law* § 224, at 268. Indeed, we have recognized that "some [legal] malpractice cases may present situations in which the proof is so clear and obvious that a ... court could, with propriety, rule as a matter of law whether the lawyer [has exercised reasonable care]." *Baker,* 225 N.W.2d at 112.

■ IV. *Application of the reasonable care standard to the facts of this case.* Following these principles, we conclude that the facts of this case present a rare instance in which only one inference may be drawn from them. The inference is that defendant Crotty's handling of Julia's estate fell below the standard of a reasonably prudent attorney. Accordingly, we conclude that Crotty breached the duty he owed to the plaintiff beneficiaries to exercise reasonable skill and care as a matter of law.

Crotty's negligence in handling Julia's estate can be summarized as two primary instances of nonfeasance: (1) his failure to use ordinary care in completing the death tax returns, and (2) his failure to thoroughly investigate and make reasonable efforts to verify the legal descriptions of the Carroll County property once he was put on notice that they were inaccurate.

A. First, Crotty negligently completed the death tax returns. Regardless of his reliance on Hudson's legal descriptions of the estate property set forth in the probate inventory, Crotty independently determined that the alternate valuation date should be used on the death tax returns. In making this determination, and later the necessary changes on the returns, Crotty had to have reviewed them. Yet Crotty failed to recognize that the same parcel of Carroll County land in section 36 was being described three times. Further, Crotty failed to recognize that some of the Carroll County land included on the returns was "subject to a life estate."

A reasonably prudent attorney performing such alternate valuation work would have recognized that the same parcel of land was being described and thereby taxed three times, and taken appropriate corrective measures. A reasonably prudent attorney reviewing the returns would also have realized that some of the Carroll County land was subject to a life estate and would have de-

creased the fee simple value by subtracting the appropriate amount for the life estate.

B. Second, Crotty failed to thoroughly investigate and make reasonable efforts to verify the legal descriptions of the Carroll County land as set forth in the filed death tax returns once he was told there was an error in the descriptions by the Carroll County district court clerk.

■ Plaintiffs' expert, attorney Erwin H. Hansen, testified as to the standard of reasonable care in the context of this case. Attorney Hansen stated that an attorney performing estate work involving parcels of land should gather information from the client, check the atlases, and call for a title search from an abstractor.[1] We also note that the duty to exercise reasonable care certainly requires an attorney to check and attempt to verify legal descriptions of land once informed of their inaccuracy.

However, the record is silent on any action Crotty took to support his "correction" of the legal descriptions of the Carroll County property as set forth in the nunc pro tunc order. Crotty admitted that he did not speak with the plaintiffs about the history of ownership of the land, he did not contact an abstract company, and he did not independently verify the accuracy of the legal descriptions of the land. In fact, besides Crotty's conversation with the Carroll County district court clerk, the record is silent concerning Crotty's reasoning and decision to change the legal descriptions of the Carroll County property in section 36 through the nunc pro tunc order.

More importantly, the record also does not disclose any action Crotty took towards amending the filed death tax returns once he changed the Carroll County property descriptions through the nunc pro tunc order. In fact, it was plaintiff Clyde Schmitz, a layperson, who ultimately discovered the overlap and errors in the Carroll County prop-

---

1. Although plaintiffs provided expert testimony on the requisite standard of care, hindsight shows that such expert testimony was not required in this case. *See Benton v. Nelsen,* 502 N.W.2d 288, 290 (Iowa App.1993) (citations omitted) (stating expert testimony is necessary unless the court can rule as a matter of law that the attorney failed to meet the applicable standard or the conduct claimed to be negligent is so clear it can be recognized or inferred by a layperson).

erty descriptions of section 36 as they were set forth in the death tax returns.

Crotty testified that an attorney must make documents completed on behalf of a client as accurate as possible and admitted responsibility for the death tax returns. He was still responsible for those returns when he was informed of a problem in the Carroll County property descriptions. This is especially true in light of the fact that at the time he was notified of the problem the deadlines for filing amended death tax returns had not yet arrived and thus Crotty could still have obtained tax refunds for the estate and thereby for the plaintiffs. By failing to go back to the death tax returns and make a reasonable effort to verify the accuracy of the legal descriptions as describing the property Julia had owned at her death, Crotty failed to use the care and skill of a reasonably prudent attorney. *Cf. Shealy v. Walters,* 273 S.C. 330, 256 S.E.2d 739, 742 (1979) (holding attorney negligent as a matter of law for his failure to properly prepare real estate papers and assure client of a marketable title).

Crotty's contention that the Carroll County clerk did not put him on notice of the fact that the change in the descriptions would also affect the number of acres does not help him. If Crotty had been exercising reasonable prudence, he would have realized that in deleting two of the parcels that had been included on Julia's death tax returns from the parcels listed in the nunc pro tunc order, he altered the number of acres legally owned and the taxable values thereon.

Finally, Crotty's lack of reasonable care is highlighted by his own testimony that he still does not know how much land Julia owned at her death. A reasonably prudent attorney filing death tax returns on behalf of an estate and receiving a substantial fee for such services should make a reasonable effort to determine the acreage a decedent owned at death.

These facts showing Crotty's mishandling of Julia's estate require us to conclude that Crotty breached the professional duty of care he owed to the plaintiffs to exercise reasonable skill and care as a matter of law.

V. *Damages.* We remand the case for the trial court to consider and award appropriate damages to the plaintiffs based on the present record. We do not suggest the amount.

The judgment of the district court is reversed, and the case is remanded for further appropriate proceedings.

**REVERSED AND REMANDED.**